**Tenzin DHOUMO, Petitioner,**

v.

**BOARD OF IMMIGRATION APPEALS, Respondent.**

**Docket No. 03–4877–AG.**

United States Court of Appeals, Second Circuit.

Submitted: June 24, 2005.

Decided: July 27, 2005.

Gary J. Yerman, New York City, for Petitioner.

Jim Letten, United States Attorney for the Eastern District of Louisiana, Constantine D. Georges and Diane Hollenshead Copes, Assistant United States Attorneys, New Orleans, LA, for Respondent.

POOLER and SOTOMAYOR, Circuit Judges, CHIN, District Judge.*

---

\* The Honorable Denny Chin, United States District Judge for the Southern District of New

PER CURIAM.

Petitioner Tenzin Dhoumo petitions for review of the Board of Immigration Appeals ("BIA")'s April 15, 2003, order summarily affirming the Immigration Judge ("IJ")'s written decision and order dated June 6, 2001, rejecting his claims for asylum and withholding of removal, and ordering him removed to India. Because the IJ and BIA failed to address the threshold issue of petitioner's nationality, the petition is granted, the BIA's order is vacated, and the case is remanded.

## BACKGROUND

Dhoumo was born in India in 1963 to two Tibetan refugee parents and raised in a Tibetan refugee camp in India. Tibet is today part of the People's Republic of China. According to petitioner's unrebutted account of Tibetan history, Tibetan followers of the Dalai Lama, reacting to what they viewed as encroachments on Tibet's traditional autonomy, unsuccessfully revolted against the Chinese Communist central government in 1959. After the revolt was suppressed, the Dalai Lama and thousands of other Tibetan officials and citizens went into exile in India and other countries. Petitioner's parents were among those who fled, arriving in India in 1960. State Department background materials entered into evidence indicate that there are today about 100,000 Tibetan refugees living in India. Background materials submitted both by petitioner and by respondent are in agreement that the conditions of life of Tibetan refugees living in India are in some respects restricted compared to those of Indian citizens, although the precise degree of these restrictions is not entirely clear. Tibetan refugees and their children living in India are generally classified by the Indian government as Tibetan refugees and not as Indian citizens. The Chinese government considers Tibetan refugees and their children outside China to be Chinese nationals.

Petitioner entered the United States in New York on July 27, 1997, and filed an application for asylum dated January 29, 1998, stating, among other things, that he was unwilling to return to Tibet because he feared persecution by the Chinese government there. In a written pleading filed with the Immigration Court dated June 2, 1998, petitioner denied the allegation that he was "a native ... and a citizen of" India, and asserted claims to asylum and withholding of removal, declining to specify a country of removal. On that same date he appeared for a hearing before the IJ, at which he submitted his written pleading and confirmed that he denied that he was a national or citizen of India. In a memorandum dated March 27, 1999, petitioner argued that he was a Chinese national and eligible for asylum based on a fear of persecution in China, which includes Tibet as a political subdivision, and also arguing that Tibetan refugees from China who are living in India cannot be considered to have "firmly resettled" there. At the initial merits hearing before the IJ on October 20, 1999, petitioner set forth that he sought asylum from China as stated in his memorandum, but that in the event he was found to have no nationality, he wished his asylum claims to be evaluated with reference to India. Because petitioner had never been to China, and therefore any past persecution would have to be established solely on the basis of testimony about occurrences in India, the IJ directed that petitioner address past occurrences in India. During several hearings over the course of the next year and a half, petitioner presented evidence regarding his conditions of residence and alleged incidents of persecution in India.

York, sitting by designation.

In a written decision dated June 6, 2001, the IJ denied petitioner's claims in their entirety. The IJ did not discuss or make any specific finding as to petitioner's nationality, and made no reference to his argument that he is a national of China. She found petitioner incredible primarily because his testimony regarding events in India was found to be inconsistent with documentary evidence of country conditions.

Petitioner appealed to the BIA, raising in his brief challenges to the IJ's failure to make a finding as to his nationality or to address his argument that he was a Chinese national, and to the IJ's adverse credibility finding. Petitioner also attached a copy of his March 27, 1999, brief submitted to the IJ arguing that he was a Chinese national. By order dated April 15, 2003, the BIA summarily affirmed without opinion. Petitioner timely petitioned this Court for review, again challenging the failure of the IJ and BIA to address his nationality, as well as arguing that the IJ's adverse credibility finding was not supported by substantial evidence.

Because petitioner's nationality, or lack of nationality, is a threshold question in determining his eligibility for asylum, the IJ and BIA erred in failing to address it. We therefore grant the petition for review, vacate the BIA's order, and remand for the IJ and BIA to address petitioner's nationality in the first instance. In light of this disposition, we do not decide whether the IJ's adverse credibility finding was supported by substantial evidence.

## DISCUSSION

▉ Where, as here, the BIA summarily affirms the IJ pursuant to 8 C.F.R. § 1003.1(e)(4)(i), we review the IJ's decision directly. *Secaida–Rosales v. INS*, 331 F.3d 297, 305 (2d Cir.2003). We may reverse the IJ for lack of substantial evidence "only if no reasonable fact-finder"

would have reached the same conclusion. *Ramsameachire v. Ashcroft*, 357 F.3d 169, 177 (2d Cir.2004) (internal quotation marks omitted). We defer to the BIA's reasonable interpretations of the immigration laws. *Michel v. INS*, 206 F.3d 253, 262 (2d Cir.2000).

While petitioner asserted throughout proceedings before the IJ and BIA that he was a Chinese national, the IJ made no specific finding as to his nationality, and apparently assumed without discussion either that he lacked any nationality, or that he was an Indian national. The determination of an alien's nationality or lack thereof is a threshold inquiry in determining the alien's eligibility for asylum. This is because an alien is eligible for asylum if he is a "refugee" within the meaning of 8 U.S.C. § 1101(a)(42). *See Qiu v. Ashcroft*, 329 F.3d 140, 148 (2d Cir.2003). "Refugee" is defined as including

> any person who is outside any *country of such person's nationality* or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, *that country* because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A) (emphasis added).

Thus, under the plain language of the statute, an alien who has a nationality is generally eligible for asylum if she has a well-founded fear of persecution in her country of nationality, regardless of where she was living before coming to the United States, and regardless of whether the government seeks to remove her to some other country. The fact that the country of

removal, as opposed to the country of nationality, is not one in which the alien fears persecution may be relevant at the stage of determining eligibility, if at all, not to whether the alien is a "refugee," but to whether one of the relevant defined exceptions applies to the general rule that refugees are eligible for asylum. These exceptions include the "safe third country" exception, 8 U.S.C. § 1158(a)(2)(A), allowing removal of refugees to a safe third country, and the "firm resettlement" exception, *id.* § 1158(b)(2)(A)(vi), requiring a mandatory denial of asylum where an alien "firmly resettled" in a third country before coming to the United States. The inquiry into the exceptions follows the threshold determination of refugee status. In addition, withholding of removal is always available as to, and only as to, the proposed country of removal. 8 C.F.R. § 208.16(b).

A "national" is "a person owing permanent allegiance to a state." 8 U.S.C. § 1101(a)(21). Nationality is a status conferred by a state, and will generally be recognized by other states provided it is supported by a "genuine link" between the individual and the conferring state. *See Restatement (Third) of Foreign Relations* § 211. Petitioner argued before the IJ and BIA that he inherited Chinese nationality from his parents, who were Chinese nationals by virtue of having been born in territory that is now, and was at the time they fled, recognized by every country in the world as being part of China. Petitioner presented evidence that China confers nationality on all Tibetan refugees and their descendants resident outside of China. Birth in a state's territory and descent from a national both "are universally accepted as based on genuine links." *Id.* cmt. c. Conferral of nationality based on state succession is also generally respected. *Id.* § 208 cmt. c; *id.* § 211 rep. n. 2. Without deciding whether petitioner demonstrated the Chinese nationality either of

his parents or himself, we note that he presented substantial argument and evidence supporting his Chinese nationality to both the IJ and the BIA. Their failure to address his position or make a finding as to his nationality was error.

This error was not harmless. If petitioner was a Chinese national, then the appropriate inquiry for the IJ would have been, primarily, not one into past occurrences in India, but into whether petitioner had a well-founded fear of persecution in China. If so, conditions in India would then be relevant to deciding whether the "safe third country" or "firm resettlement" exceptions applied. The IJ did not discuss either of these exceptions, and her findings as to past persecution are not dispositive as to either.

First, India apparently does not qualify as a "safe third country" under 8 U.S.C. § 1158(a)(2)(A), because a country may only qualify as a "safe third country" by virtue of having negotiated a bilateral or multilateral treaty establishing that status, and no such treaty has been negotiated. *See* Asylum Procedures, 65 Fed.Reg. 76,-121, 76,126 (Dec. 6, 2000) (noting that no such treaties exist and so no country qualifies as a safe haven, and reaffirming that announcement of any such treaties will be made in Federal Register); Rules and Procedures for Adjudication of Applications for Asylum or Withholding of Deportation and for Employment Authorization, 59 Fed.Reg. 62,284, 62,296 (Dec. 5, 1994) (same).

Second, the IJ failed to make any of the findings of fact relevant to a consideration of "firm resettlement," which requires determining whether petitioner had some permanent status in India and, if so, whether India "substantially and consciously" restricted his conditions of residence. *See* 8 C.F.R. § 208.15. While petitioner presented substantial evidence and

argument that this was the case, the IJ did not reach this question. The IJ's finding that petitioner did not suffer past persecution in India is not dispositive of whether his conditions of life were substantially and consciously restricted there, which is an entirely separate inquiry.

## CONCLUSION

For the foregoing reasons, Dhoumo's petition for review is granted, the BIA's order summarily affirming the IJ and denying his applications for asylum and withholding of removal is vacated, and the case is remanded for further proceedings consistent with this opinion. Because remand is required in any event to allow the IJ and BIA to address the issue of petitioner's nationality in the first instance, we need not decide whether the IJ's decision was in other respects supported by substantial evidence.