In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-1301

MUNZER A. ZAHREN,

*Petitioner,*

*v.*

ALBERTO R. GONZALES,

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A75 300 521

ARGUED FEBRUARY 14, 2007—DECIDED MAY 17, 2007

Before MANION, WOOD, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* Munzer Abuzahreh[1] was born in 1971 in a small West Bank community on the outskirts of Hebron, one of the oldest continually habited cities in the world. In 1994, he entered the United States, but he did not attend Kirkwood Community College in Cedar Rapids, Iowa, the school designated in his student visa. This violated a condition of the visa under 8 U.S.C.

---

[1] The caption in this case lists the petitioner as "Munzer A. Zahren," but because it is clear from the administrative record that his name is Munzer A. Abuzahreh, it is that name that we will use here.

§ 1101(a)(15)(F)(i). But as Abuzahreh later explained, he did not realize (his primary language is Arabic) that he had to attend the precise school named in the visa. He thought he could go to any school in the United States, and he went, for one year, to Western Technical College in La Crosse, Wisconsin, where a cousin of his was a student. After a year there, sometime in 1996, he relocated to Milwaukee, where he has lived and worked (he had various jobs ranging from driving a taxi to cooking and delivering pizzas for Domino's) with minor exceptions ever since.

Moving ahead, Abuzahreh returned to Hebron briefly in 1996, reentered the U.S. on his student visa, left again in 1998, and was paroled back into the country pending the results of an I-130 petition for alien relative (he was attempting to adjust to permanent resident status based on his 1996 marriage to a U.S. citizen; the petition was denied in 2001 following a divorce). In September 2002, DHS placed Abuzahreh in removal proceedings, charging him with seeking to procure a visa by willful misrepresentation in violation of 8 U.S.C. § 1182(a)(6)(C)(i), failing to remain outside the U.S. for 5 years following violation of the conditions of his student visa, *see* 8 U.S.C. § 1182(a)(6)(G), and being in the U.S. without a valid entry document, *see* 8 U.S.C. § 1182(a)(7)(A).

An immigration judge (IJ) found him removable on the second and third charges, and he applied for asylum, withholding of removal, and relief under the United Nations Convention Against Torture (CAT), arguing that it was more likely than not that he would face persecution or torture if returned to Hebron. Why? Well, he was raised in a strict Muslim family but converted to Christianity in the United States, an act treated as a capital offense under Islamic law, *Bastanipour v. INS*, 980 F.2d 1129, 1133 (7th Cir. 1992). He says that he will face

death, perhaps at the hands of his own family, if he is sent back there.

It is a compelling argument, one we believe is supported by convincing evidence that was not accorded appropriate weight by the Board of Immigration Appeals (BIA) (whose decision is the subject of our review) when it denied Abuzahreh's appeal of the IJ's order finding Abuzahreh credible regarding his conversion but nevertheless denying his claims for relief and ordering his removal.[2] At a minimum there would be fertile ground for reopening a removal order to the West Bank based on changed country conditions, for while this appeal was pending, Hamas—a U.S.-designated Foreign Terrorist Organization, *see* U.S. Department of State, *Fact Sheet: Foreign Terrorist Organizations*, Oct. 11, 2005, *available at* http://www.state.gov/s/ct/rls/fs/37191.htm— gained legislative control of the Palestinian National Authority. Steven Erlanger, *Palestinian Landslide: The Elections; Hamas Routs Ruling Faction, Casting Pall on Peace Process*, N.Y. Times, Jan. 27, 2006, at A1.

Unfortunately for Abuzahreh, however, the conditions in Hebron are irrelevant because the immigration judge ordered his removal to *Jordan*, a choice that, based on the

---

[2] The BIA remanded the case to the IJ for consideration of Abuzahreh's application for voluntary departure. Because this appeal was taken from the BIA's decision, the United States insists that we are not reviewing a "final order of removal" under 8 U.S.C. § 1252(a) and therefore have no jurisdiction over this petition. Because the IJ has now granted voluntary departure (which we have stayed pending the results of this appeal), and because we would have no jurisdiction to review that determination in any event, *see* 8 U.S.C. § 1252(a)(2)(B)(i), we will treat the BIA's order as final without deciding whether an order of removal is "final" if there remains an unresolved application for voluntary departure.

record before us, *see* 8 U.S.C. § 1252(b)(4)(a), we can only conclude is appropriate despite our reservations.

Generally the government is obliged to remove an alien to the country he or she has designated, so long as that country consents to the removal. *See id.* § 1231(b)(2)(A). But where the alien declines to make a designation, "the Attorney General shall remove the alien to a country of which the alien is a subject, national, or citizen" unless the country fails to agree to the alien's return. *Id.* § 1231(b)(2)(D). This is not a discretionary duty—only a failure of acceptance permits removal to some other place. *See Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 341, 125 S. Ct. 694, 699-700 (2005).

Considering that Abuzahreh was born in the West Bank and lived there for the first 20 years of his life, we would expect that he is a stateless Palestinian, not a Jordanian citizen. Under this scenario, removal to Jordan would be improper at this stage, and we would remand to the BIA for further proceedings (while also emphasizing our concerns about the consequences of his removal to the West Bank, should that possibility be reconsidered).

But Abuzahreh entered this country with a Jordanian passport, a fact that in the typical case would tell us all we need to know but that here only blurs the picture: Jordan held the West Bank from the 1948 Arab-Israeli War until the Six Day War in 1967, and a 1954 law extended citizenship to all Palestinians living there. When Israel took control, things changed, and in 1983 Jordan formally modified the law so that Palestinians remaining in the West Bank after June 1 of that year no longer maintained Jordanian citizenship or a right of residence. Of greatest relevance to this case, those who remained could instead hold temporary Jordanian "passports" that did not indicate citizenship but were usable as travel documents (a handy device for passing through Jordan,

rather than Israel, for the purpose of traveling elsewhere). *See* United Nations High Commissioner for Refugees, *Palestine and Jordan: Whether the Acquisition of a Palestinian Authority Passport Leads to the Loss of Rights to Jordanian Leadership*, Mar. 2006, *at http://www. unhcr.org/home/RSDCOI/45f147d625.html.* When Jordan renounced its claim to West Bank control in 1988, this temporary passport system remained: Palestinians residing in the West Bank can obtain 5-year Jordanian travel passports that confer no citizenship. *Id.*

All of this suggests to us that Abuzahreh may not be a Jordanian citizen or that at the very least it is an important question in need of clarification. *Cf. Almuhtaseb v. Gonzales*, 453 F.3d 743, 746 (6th Cir. 2006) ("[T]he BIA reversed the IJ's conclusion regarding Jordanian citizenship, and instead concluded that Almuhtaseb is a stateless Palestinian."); *Himri v. Ashcroft*, 378 F.3d 932, 938 (9th Cir. 2004) ("The IJ erred when it designated Jordan, a country to which the petitioners have no ties except through their travel documents, as an alternate country of removal at the government's request."). But Abuzahreh apparently admitted without further comment at his first hearing before the IJ that the allegation of Jordanian citizenship in the notice to appear was correct. This despite the fact that DHS had never (and apparently has never) shown him a copy of his seized (expired) passport (Jordanian temporary passports and citizen passports have distinct markings).

Other than this admission and the government's own paperwork, there is nothing in the record to indicate that Abuzahreh is a Jordanian citizen. He describes himself as Palestinian in his affidavit and makes no reference to Jordan. His application for asylum and withholding of removal lists his nationality as "Palestinian; Jordanian passport" and his nationality at birth as "Israel/Jordanian

passport." And although his birth certificate is issued by Jordan, it clearly lists his birthplace as Yatta, Israel, at a time when Jordan continued to exercise ministerial functions in the West Bank, despite Israeli control. *See Abdel-Muhti v. Ashcroft*, 314 F. Supp. 2d 418, 425 (M.D. Pa. 2004).

Still, in spite of our doubts, "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Other courts have reversed an IJ or BIA finding regarding citizenship, but only in the face of a challenge to that finding by the party disputing removability. Abuzahreh took the opposite step, and in light of his admission and the absence of his passport from the record, we must accept the finding that he is a Jordanian citizen.

This effectively ends the inquiry, because at no stage of this case—not before the IJ, not before the BIA, and not before us—has Abuzahreh ever contended that he faces persecution or torture in Jordan. His oral argument and all of his briefs address only the situation in Hebron. This cannot have been an oversight, for both the IJ and BIA noted the absence of any arguments regarding Jordan in their respective decisions and the government pointed out the same in each of its briefs and at oral argument. (Perhaps this ironically underscores that fear of Hebron, rather than general avoidance of removal from the United States, was Abuzahreh's first priority.) We are left with no basis to question the BIA's order, and Abuzahreh's petition for review must be denied.

We note briefly that we do not know whether Jordan will accept Abuzahreh's removal, but because "[n]o commitment of acceptance by the receiving country is required prior to designation of the receiving country, before travel arrangements are made, or before the alien is transported

to the receiving country," 8 C.F.R. § 241.15(d), we suspect this is an open question. If Abuzahreh declines voluntary departure and Jordan refuses acceptance, DHS may attempt, under the third step for choosing a removal country under 8 U.S.C. § 1231(b)(2)(E), to send Abuzahreh back to the West Bank. Should this occur, Abuzahreh would be wise, in light of the ascendancy of Hamas, to file a motion to reopen his removal order in accordance with 8 U.S.C. § 1229a(c)(7)(ii), which imposes no deadline on the filing of a motion to reopen for withholding of removal (and asylum) relief based on changed country conditions.

For the foregoing reasons the petition for review is DENIED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*