*Urgen v. Holder*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2013

(Submitted: April 23, 2014      Decided: October 2, 2014)

Docket No. 12-809

URGEN, AKA SHERPA URGEN, AKA URGUYEN,

*Petitioner*,

- v. -

ERIC H. HOLDER, JR., UNITED STATES ATTORNEY GENERAL,

*Respondent.*

Before:

WINTER, PARKER, and HALL, *Circuit Judges.*

Petition for review from the February 8, 2012 decision of the Board of Immigration Appeals, affirming the denial of Petitioner's application for asylum, withholding of removal, and relief under the Convention Against Torture. On appeal, Petitioner contends that his testimony and evidence were sufficient to establish that he is a stateless Tibetan born in Nepal. Because the Board of Immigration Appeals erroneously required Petitioner to prove his nationality through documentary evidence alone, we VACATE and REMAND the Board of Immigration Appeals decision with instructions to review the Immigration Judge's credibility finding. On remand, the agency is also instructed to make an explicit finding with respect to Petitioner's country of nationality and citizenship for purposes of (1) establishing the country with respect to which the agency is conducting its asylum inquiry and (2) ensuring compliance with the mandatory, consecutive removal commands of 8 U.S.C. § 1231(b)(2).

VACATED AND REMANDED.

URGEN, *Pro Se*, Woodside, NY, *for Petitioner*.

YANAL H. YOUSEF, Trial Attorney, Office of
          Immigration Litigation, Civil Division (Stuart F.
          Delery, Principal Deputy Assistant Attorney

General, Jamie M. Dowd, Senior Litigation Counsel, *on the brief*), United States Department of Justice, Washington, DC, *for Respondent*.

PER CURIAM:

Petitioner Urgen, who asserts he is a stateless Tibetan born in Nepal, seeks review of a February 8, 2012 decision of the Board of Immigration Appeals ("BIA"), affirming an Immigration Judge's ("IJ") June 8, 2010 denial of asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). The IJ found that Urgen failed to establish credibly that he is a stateless Tibetan born in Nepal and ordered him removed to Nepal. The BIA did not rely on the IJ's credibility determination, or otherwise consider Urgen's testimony, and affirmed the denial of relief because Urgen's documentary evidence failed to establish his Tibetan nationality. Neither the IJ nor the BIA resolved the question of Petitioner's country of nationality or citizenship. Because the BIA erroneously required Petitioner to establish his nationality through documentary evidence alone, we VACATE and REMAND the BIA's decision with instructions to review the IJ's credibility finding. On remand, the agency is also instructed to make an explicit finding with respect to Petitioner's country of nationality and citizenship for purposes of (1) establishing the country with respect to which the agency is conducting its asylum inquiry and (2) ensuring compliance with the mandatory, consecutive removal commands of 8 U.S.C. § 1231(b)(2).

## BACKGROUND

Petitioner Urgen entered the United States on a temporary worker visa and Nepal passport in 2006. He filed a timely, affirmative application for asylum, withholding of removal, and CAT relief based on his status as a stateless Tibetan born in Nepal. Urgen's

2

application provided the following. He was born in Solukhumbhu, Nepal to Tibetan parents who fled to Nepal in the 1970s to escape persecution by China. Neither Urgen nor his parents attained citizenship or any other legal status in Nepal. In 2004, Urgen joined the Tibetan Freedom Movement Group and paid contributions to the Tibetan government in exile. Nepalese Maoists severely beat Urgen for resisting their recruitment and extortion attempts, and Urgen was forced to relocate with his family to Kathmandu. In 2006, Nepalese police arrested Urgen on his way home from a Tibetan independence rally. He was wearing a "Free Tibet" t-shirt, and the officers informed him that it was illegal to wear anti-Chinese clothing in Nepal due to pressure from the Chinese government. When the officers learned that Urgen did not have legal status, they threatened to deport him to China if his parents did not pay a bribe; his parents paid the bribe. Urgen then fled to the United States using a fraudulent Nepal passport and U.S. visa that his father had obtained for him. Urgen supported his application with, *inter alia*, his Nepal passport, U.S. visa, Green Book (Tibetan Identity Certificate), school records, and a letter from his parents. The government submitted Urgen's passport and visa to the U.S. Department of State's Forensic Document Laboratory for testing. The Forensic Document Laboratory could not conclusively authenticate Urgen's passport, but noted that its security features and quality were consistent with other Nepal passports on file and that it bore no evidence of page or photograph substitution. The Forensic Document Laboratory confirmed that Urgen's U.S. visa was genuine. Urgen's application was subsequently referred to the Immigration Court. He was placed in removal proceedings through service of a Notice to Appear. The Notice to Appear asserted that Urgen was a native and citizen of an unknown country and charged

3

him with removability under the Immigration and Nationality Act ("INA") § 237(a)(1)(A), as an alien who entered the United States without a valid immigrant visa. Urgen later appeared before an IJ, conceded his removability, and declined to designate a country of removal. The government designated Nepal.

At the conclusion of a 2010 merits hearing, the IJ denied all relief in an oral decision and ordered Urgen removed to Nepal based on the charge contained in the Notice to Appear. *In re Urgen*, No. A088 372 176 (Immig. Ct. New York City June 8, 2010). The IJ found that Urgen failed to establish that he is a stateless Tibetan born in Nepal. The IJ based her adverse credibility determination on various implausibilities in Urgen's account. She also observed that the name listed on Urgen's school records and passport ("Urgen Sherpa") was inconsistent with his testimony that he had only one given name ("Urguyen"); the IJ refused to credit Urgen's explanation that the school had added "Sherpa" to his records because the entire village had that same last name. The IJ further found that Urgen's documentary evidence failed to corroborate his identity. She accorded diminished weight to Urgen's Green Book because it was unauthenticated and not issued by a governmental authority, as well as to his parents' letter, which was in English and unsupported by identity documents. Concerning Urgen's passport, the IJ observed that "[e]ither the passport is no good and we do not know who [Urgen] is or the passport is a valid document—as is stated by the Forensic Document Lab—and [Urgen] is Nepalese." The IJ ultimately concluded that she did "not know [whether Urgen] is, indeed, a Tibetan versus a Nepali," and ordered him removed to Nepal.

4

Urgen appealed.  In a February 8, 2012 order, the BIA dismissed the appeal.  *In re Urgen*, No. A088 372 176 (B.I.A. Feb. 8, 2012), *aff'g* No. A088 372 176 (Immig. Ct. New York City June 8, 2010).  Relying on *Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006), for the proposition that identity and nationality are threshold issues in determining asylum eligibility, the BIA found that Urgen failed to meet that burden.  The BIA agreed that Urgen's Green Book and parents' letter were entitled to diminished weight and concluded that, "[a]t best, [Urgen's] documentary evidence created a question about his name, nationality, and citizenship."  The BIA, however, did not review the IJ's adverse credibility finding or Urgen's testimony, or otherwise consider the merits of his claims.

## DISCUSSION

We review the IJ's decision as modified by the BIA, *i.e.*, minus the arguments for denying relief that were rejected by the BIA.  *Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir. 2005).  Although the BIA did not explicitly reject the IJ's adverse credibility determination, the BIA did not address the issue of Urgen's credibility at all and rested its decision entirely on other grounds.  Generally, in this situation, we review the agency's decision minus the adverse credibility determination.  *See id.*  We are unable to do so here because the BIA's failure to consider the IJ's credibility finding precludes meaningful judicial review.  *See Beskovic v. Gonzales*, 467 F.3d 223, 227 (2d Cir. 2006) (requiring a certain minimal level of analysis from agency decisions denying asylum to enable meaningful judicial review).

The government concedes that the BIA did not reach the issue of Urgen's credibility but argues that there was no need to consider his testimony because he failed to meet the threshold of establishing his "Tibetan nationality."  Because Tibet is today part of the

5

People's Republic of China, we understand the government and BIA's reference to "Tibetan nationality" to mean "Chinese nationality." *See Dhoumo v. BIA*, 416 F.3d 172, 175 (2d Cir. 2005) (per curiam). Regardless, the practical consequence of the government's position is to impose a requirement that an asylum applicant establish his or her nationality through documentary evidence alone. While we have recognized that an applicant's "nationality, or lack of nationality, is a threshold question in determining his eligibility for asylum," *id.* at 174, there is no requirement that this showing be made through non-testimonial evidence. Such a requirement directly contradicts the statute and controlling precedent, and it "ignore[s] the proposition that an applicant can meet his burden of proof based on credible testimony alone," *Zaman v. Mukasey,* 514 F.3d 233, 238 n.4 (2d Cir. 2008) (per curiam). *See* 8 U.S.C. § 1158(b)(1)(B)(ii) (providing that "[t]he testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration"); *accord* 8 C.F.R. § 1208.13(a). By failing to review the IJ's credibility determination, or otherwise consider Urgen's testimony, the BIA denied him the "potential benefit" of establishing his asylum eligibility through credible testimony alone. *See Diallo v. INS*, 232 F.3d 279, 287 (2d Cir. 2000). The BIA's failure to consider the IJ's credibility determination, moreover, has also frustrated our review because we cannot—any more than the BIA—meaningfully review the denial of relief without regard to Urgen's testimony. *See Beskovic*, 467 F.3d at 227.

We note, furthermore, that the agency's finding that Urgen failed to establish his nationality did not obviate the need to resolve conclusively Urgen's country of nationality and citizenship. *See Wangchuck*, 448 F.3d at 529; *Dhoumo,* 416 F.3d at 174. In *Wangchuck* and *Dhoumo*, "which [both] involved . . . Tibetan petitioner[s] born in India, we concluded that

6

the BIA had erred in failing to determine the petitioner[]s['] nationality." *Wangchuck*, 448 F.3d at 529 (citing *Dhoumo*, 416 F.3d at 174). We explained that the agency is required to make this threshold determination because "[t]he INA . . . provides that individuals are eligible for asylum *only if they fear persecution in the country of their nationality* or, if they have no nationality, in the country in which they most recently 'habitually resided.'" *Wangchuck*, 448 F.3d at 529 (emphasis added) (quoting 8 U.S.C. § 1101(a)(42)). A finding with respect to the asylum applicant's nationality is therefore necessary because without it as a reference, the agency cannot analyze an applicant's claim of well-founded fear of persecution. The agency's failure to resolve the issue here—and the BIA's corresponding refusal to consider Urgen's testimony or the merits of his claims—is particularly troubling because Urgen alleged a fear of persecution and torture in both Nepal and China.[1]

We have also explained that an explicit determination with respect to a petitioner's country of nationality or citizenship is necessary to ensure compliance with the mandatory, consecutive removal commands of 8 U.S.C. § 1231(b)(2). *See Wangchuck*, 448 F.3d at 530–31.[2] Where, as here, "the alien does not designate a country, the Attorney General has

---

[1] Unlike asylum eligibility, which is predicated upon an applicant demonstrating a well-founded fear of persecution in his or her country of nationality, withholding of removal and CAT relief are "available as to, and only as to, the proposed country of removal." *See Dhoumo*, 416 F.3d at 175 (discussing withholding of removal); *see* 8 C.F.R. § 1208.16(c)(2) (predicating eligibility for CAT relief on an finding that "it is more likely than not that [the applicant] would be tortured if removed to *the proposed country of removal*." (emphasis added)). An applicant's nationality, therefore, is not a threshold issue in determining eligibility for withholding of removal and CAT relief.

[2] Title 8, Section 1231(b)(2) of the United States Code provides four "consecutive" removal commands. *Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 341 (2005). First, an alien shall be removed to a country of his choice. 8 U.S.C. § 1231(b)(2)(A). Second, if the alien does not promptly designate a country or if the government of the country designated is not willing to or does not timely accept the alien after inquiry by the Attorney General, the alien shall be removed to the country of which he is a citizen or national. *See* 8 U.S.C. § 1231(b)(2)(D); *see also Jama*, 543 U.S. at 341. Third, if the alien's country of citizenship or nationality does not timely inform the Attorney General of its acceptance or the country is unwilling to accept the alien, the alien shall be removed to one of the countries with which he has a lesser connection, including "[t]he country from which the alien was admitted to the United States." *See* 8 U.S.C. § 1231(b)(2)(E); *see also Jama*, 543 U.S. at 341. Fourth, if it is "impracticable, inadvisable, or impossible" to remove the

little choice but to remove him to the country of which he is a subject, national, or citizen." *Enwonwu v. Gonzales*, 438 F.3d 22, 29 n.7 (1st Cir. 2006) (citing 8 U.S.C. § 1231(b)(2)(D)). "This is not a discretionary duty—only a failure of acceptance permits removal to some other place." *Zahren v. Gonzales*, 487 F.3d 1039, 1041 (7th Cir. 2007), *reh'g granted*, 637 F.3d 698 (7th Cir. 2011). Because neither the IJ nor the BIA resolved Urgen's country of nationality or citizenship, it is unclear whether he may be removed to Nepal. *See Wangchuck*, 448 F.3d at 531 ("[W]e do not know if he is a Chinese 'subject, national, or citizen,' so we cannot tell whether he may be removed to China under [8 U.S.C. § 1231(b)(2)(D)].""). Accordingly, on remand, the agency is instructed to make an explicit determination with respect to Urgen's country of nationality and citizenship.

## CONCLUSION

Based on the foregoing, we VACATE AND REMAND the decision of the BIA for further proceedings consistent with this opinion.

---

alien to a country with which he has a lesser connection, the Attorney General shall remove him to another country whose government will accept the alien. *See* 8 U.S.C. § 1231(b)(2)(E); *see also Jama*, 543 U.S. at 341.