Tobar-Bautista v. Sessions

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED
BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.
WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY
MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE
NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY
OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**


        At a stated Term of the United States Court of Appeals for the Second Circuit, held at the
Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the
9th day of February, two thousand eighteen.


Present:        ROSEMARY S. POOLER,
                ROBERT D. SACK,
                        *Circuit Judges*.
                PAUL A. ENGELMAYER,[1]
                        *District Judge*.

_____

DANIEL O. TOBAR-BAUTISTA,

                        *Petitioner*,

                v.                                              16-4229

JEFFERSON B. SESSIONS III, UNITED STATES ATTORNEY GENERAL,

                        *Respondent*.

_____

Appearing for Petitioner:        David M. Sperling, Central Islip, N.Y.

_____

[1] Judge Paul A. Engelmayer, United States District Court for the Southern District of New York,
sitting by designation.

Appearing for Respondent:    Aric A. Anderson, Office of Immigration Litigation, U. S. Department of Justice (Chad A. Readler, Acting Assistant Attorney General, Kohsei Ugumori, Senior Litigation Counsel, *on the brief*), Washington, D.C.

Petition for review of a decision from the Board of Immigration Appeals.

  **ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition for review of said Board of Immigration Appeals ("BIA") decision be **GRANTED** and the decision **VACATED** and **REMANDED** for further consideration consistent with this order.

  Petitioner Daniel O. Tobar-Bautista, a native and citizen of El Salvador, seeks review of a November 30, 2016 order of the Board of Immigration Appeals ("BIA"), affirming an April 22, 2016 decision of an immigration judge ("IJ") denying cancellation of removal and ordering him removed to El Salvador. *In re Daniel O. Tobar-Bautista*, No. A095 052 100 (BIA Nov. 30, 2016) ("BIA Decision"), *aff'g* No. A095 052 100 (Immig. Ct. N.Y.C. Apr. 22, 2016) ("IJ Decision"). The IJ denied Tobar-Bautista's application for cancellation of removal on the grounds that he failed to demonstrate his cancellation would cause "exceptional and extremely unusual hardship" to his U.S. citizen daughters. The IJ also determined that he would have discretionarily denied the application for relief. The BIA affirmed on the hardship determination only and did not reach the discretionary determination. We assume the parties' familiarity with the remaining underlying facts and procedural history.

  We review the IJ's decision only as modified by the BIA. *See Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir. 2005) (reviewing IJ's decision "minus the single argument for denying relief that was rejected by the BIA"). Generally, where the BIA does not explicitly reject the discretionary determination of the IJ and instead "rest[s] its decision entirely on other grounds," we review the IJ's decision only insofar as it was reached by the BIA. *Urgen v. Holder*, 768 F.3d 269, 272 (2d Cir. 2014). However, where the BIA's failure to consider grounds raised by the IJ precludes meaningful judicial review, we will review the IJ decision directly. *Id.*

  Applicants for cancellation of removal must meet four statutory criteria to be eligible for this form of relief from deportation: (1) ten years of continuous physical presence in the United States prior to the date of application, (2) good moral character during the period of required continuous physical presence, (3) no convictions of certain classes of offenses, and (4) establishment that their deportation would produce "exceptional and extremely unusual hardship" to a spouse, parent, or child who is a United States citizen or lawful permanent resident. 8 U.S.C. § 1229b(b)(1). In this case, the government conceded that Tobar-Bautista met the first three criteria, so the only eligibility element Tobar-Bautista was required to prove was that his removal would cause "exceptional and extremely unusual hardship" to his U.S. citizen daughters. We observe at the outset that the IJ found Tobar-Bautista's testimony to be credible.

  Our jurisdiction to review the agency's denial of cancellation of removal based on failure to satisfy the hardship requirement is limited to constitutional claims and questions of law. 8 U.S.C. § 1252(a)(2)(B), (D); *Barco-Sandoval v. Gonzales*, 516 F.3d 35, 39-40 (2d Cir. 2008).

2

Accordingly, our review of the hardship determination is limited to whether the decision "is made without rational justification or based on an erroneous legal standard, or rests on fact-finding which is flawed by an error of law." *Mendez v. Holder*, 566 F.3d 316, 322 (2d Cir. 2009) (internal citation and quotation marks omitted). An agency makes an error of law when "some facts important to the subtle determination of 'exceptional and extremely unusual hardship' have been totally overlooked and others have been seriously mischaracterized." *Id.* at 323. But "the agency does not commit an 'error of law' every time an item of evidence is not explicitly considered or is described with imperfect accuracy." *Id.*

Immigration courts are guided in their hardship analyses by the seminal BIA decisions in *In re Monreal-Aguinaga*, 23 I&N Dec. 56 (BIA 2001) and *In re Andazola-Rivas*, 23 I&N Dec. 319 (BIA 2002). "*Matter of Andazola* and *Matter of Monreal* are the starting points for any analysis of exceptional and extremely unusual hardship." *In re Gonzalez Recinas*, 23 I&N Dec. 467, 469 (BIA 2002). *In re Monreal* explained:

> For cancellation of removal, we consider the ages, health, and circumstances of qualifying lawful permanent resident and United States citizen relatives. For example, an applicant who has elderly parents in this country who are solely dependent upon him for support might well have a strong case. Another strong applicant might have a qualifying child with very serious health issues, or compelling special needs in school. A lower standard of living or adverse country conditions in the country of return are factors to consider only insofar as they may affect a qualifying relative, but generally will be insufficient in themselves to support a finding of exceptional and extremely unusual hardship. As with extreme hardship, all hardship factors should be considered in the aggregate when assessing exceptional and extremely unusual hardship.

23 I&N Dec. at 63-64. In addition to these factors, *In re Andazola-Rivas* also considered the accumulated assets of the petitioner regarding the hardship that would be experienced by his or her qualifying relatives. 23 I&N Dec. at 324 (finding that the accumulation of significant assets is a relevant factor insofar as it eases the transition experienced by the family). The "exceptional and extremely unusual hardship" standard is high, but "not so restrictive that only a handful of applicants, such as those who have a qualifying relative with a serious medical condition, will qualify for relief." *In re Gonzalez Recinas*, 23 I&N at 470.

Though the IJ's decision recites the appropriate legal standards,[1] the decision misapplies legal standards, entirely overlooks certain key evidence, and seriously mischaracterizes other pieces of evidence, such that the decision is erroneous as a matter of law.

The IJ properly identifies Tobar-Bautista's two U.S. citizen daughters (Genesis and Angela) as qualifying relatives. The IJ then observes that "[t]o show that his daughters suffer from asthma, Tobar-Bautista submitted various medical documents that simply do not show the requisite hardship." IJ Decision at 7. But Tobar-Bautista is not required to demonstrate that the

---

[1] Just as we must look behind the "rhetoric employed in the petition" to determine whether it actually raises a "constitutional claim" or "question of law," *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 329 (2d Cir. 2006), we must also look behind the rhetoric of the IJ decision to determine whether he or she actually employs the legal standards recited.

3

asthma alone satisfies the hardship standard, as the IJ states here. Instead, "all hardship factors should be considered in the aggregate." *In re Monreal-Aguinaga*, 23 I&N at 64. It was error for the IJ to determine that the medical documents alone did not establish hardship.

The IJ also mischaracterizes key factors regarding the hardship determination, particularly regarding the health problems of Tobar-Bautista's youngest child (Genesis). Though the letter from Harriet L. Hellman, CPNP, Ph.D., observed that Genesis suffers from "health problems [that] are significant and require ongoing evaluation and treatment," Record on Appeal at 217, the IJ mischaracterized Genesis' health problems as minor ailments in direct contradiction of the record evidence. Similarly, the IJ describes Hellman's assessment of the older daughter's asthma as "under control," but fails to acknowledge Hellman's report that she has treated the older daughter for "severe respiratory distress." Record on Appeal at 216. Significantly, the IJ did not question the credibility of Hellman.

The IJ also failed to account for several other key factors identified in previous BIA cases, including the extensive record evidence indicating that Tobar-Bautista is the primary wage earner in the family and that his wages are below the poverty line. Assets—or lack thereof—are a factor for the immigration court to consider in its hardship determination. *See In re Andazola-Rivas*, 23 I&N Dec. at 324 (finding that the petitioner had some assets including a home, two vehicles, and $7,000 in a savings account that "would surely help her in establishing a new life in Mexico."). The IJ also failed to account for the volatile country conditions in El Salvador and the hardship faced by Angela and Genesis due to their father's residence there or if they were forced to return there with their father since he is the primary financial provider for the family. *In re Monreal-Aguinaga*, 23 I&N Dec. at 63-64. The IJ also failed to consider the ages of the daughters at the time of his decision—13 and almost 12 (now 15 and almost 14)—which the BIA has held to be a relevant factor in the hardship determination. *See, e.g.*, *In re Andazola-Rivas*, 23 I&N Dec. at 324 (finding that the good health and young age of the children—in that case, 6 and 11—would make it easier for them to adapt to life in Mexico).

The IJ also determined that even if Tobar-Bautista met the statutory eligibility for cancellation, the IJ would have denied his application "as an exercise of its broad discretion." IJ Decision at 9. This discretionary decision is premised primarily on the IJ's concerns about Tobar-Bautista's DWI arrests over a decade prior to the IJ decision, including the "societal costs of driving under the influence of alcohol." *Id*. The record evidence, including both Tobar-Bautista's own testimony and letters from his partner and employer, indicates that Tobar-Bautista attended 60 days of rehabilitation, a six-month program on alcoholism by Catholic Charities, and is now a "changed man" and "completely clean." Record on Appeal 70, 352, 355. The IJ suggested that Tobar-Bautista had not "taken full responsibility" for his DWI arrests because Tobar-Bautista has an occasional drink and no longer attends Alcoholics Anonymous meetings. IJ Decision at 9-10; Record on Appeal at 72-73. Given the "ordinary remand requirement" that requires the agency to determine matters in the first instance, *Gonzales v. Thomas*, 547 U.S. 183, 186 (2006) (quoting *INS v. Orlando Ventura*, 537 U.S. 12, 16, 17 (2002)), we remand the discretionary determination for BIA review.

Accordingly, the petition for review hereby is GRANTED and the decision of the BIA is VACATED and REMANDED for further consideration consistent with this order. Each side to bear its own costs.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk