# United States Court of Appeals
## For the First Circuit

No. 20-1259

DORJEE THILE,

Petitioner,

v.

MERRICK B. GARLAND,*
U.S. Attorney General,

Respondent.

---

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

---

Before

Lynch and Selya, <u>Circuit Judges</u>,
and Katzmann,** <u>Judge</u>.

---

<u>Gary J. Yerman</u> and <u>The Yerman Group, LLC</u> on brief for petitioner.

<u>Robbin K. Blaya</u>, Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, <u>Ethan P. Davis</u>, Acting Assistant Attorney General, Civil Division, and <u>John S. Hogan</u>, Assistant Director, Office of Immigration Litigation, Civil Division, on brief for respondent.

---

* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Merrick B. Garland has been substituted for former Attorney General William P. Barr.

** Of the United States Court of International Trade, sitting by designation.

March 19, 2021

**KATZMANN, Judge.** Dorjee Thile seeks relief from removal on the grounds of asylum, withholding of removal under the Immigration and Nationality Act (INA), and protection under the United Nations Convention Against Torture (CAT). He contends that the Board of Immigration Appeals (BIA) erred in affirming an Immigration Judge's (IJ) decision to deny his applications. He bases his petition for relief on a claim that the BIA erroneously disregarded his testimony and other evidence of his Chinese citizenship. We deny Thile's petition for review.

## I.   DETERMINATION UNDER REVIEW

Thile arrived in the United States on February 9, 2010, in Los Angeles, California. He was admitted to the United States on an Indian passport with a temporary visitor visa obtained at the United States embassy in Brisbane, Australia. On July 1, 2010, Thile applied for asylum, withholding of removal, and protection under CAT. Thile completed an asylum interview on August 10, 2010. The Department of Homeland Security thereafter issued Thile a Notice to Appear, which alleged that he was a native and citizen of India and charged him with removability for remaining in the United States longer than his visa permitted. Thile admitted the factual allegations and conceded the charge of removability but denied that he was an Indian citizen. Rather, he claimed that he was of Tibetan nationality with Chinese citizenship.

- 3 -

Thile's petition for review is based on the following testimony by Thile and supporting information in his asylum application: Thile stated that he was born and grew up in Kham, Tibet. He was a farmer in Tibet and married his wife in 1992, with whom he has three children. Because Thile was raised by an uncle after his father passed away when Thile was a child, he claimed he did not possess his birth certificate. Thile is a Buddhist and claims that he was unable to freely practice his religion because of the Chinese occupation of Tibet. Further, he reported that his family faced discrimination based on their opposition to the Chinese government's occupation of Tibet. He testified that in August of 2002 he distributed flyers with his friend that mentioned the Dalai Lama and freedom for Tibet. Thile claims his friend was then arrested in connection with the flyer distribution, and Thile decided to flee Tibet fearing arrest, torture, and/or being killed by police. He first fled to Nepal, and then further traveled to Darjeeling, India where his aunt lived. He claims that he discarded his Chinese identity card before entering India in order to avoid being deported.

Thile testified that he resided in India for more than six years, from October 2002 to May 2009. He claims that he was arrested in India on March 10, 2009, during a protest connected to events in Tibet. He further claims he was detained for two days, during which he was physically mistreated and threatened with

deportation. Thile then decided to leave India but claims that he did not possess a Chinese passport because the Chinese government did not issue passports to Tibetans, and that he was unable to obtain a passport from either Nepal or India. He explained that he obtained a fraudulent Indian passport from a broker so that he could travel to Australia. Thile remained in Australia for nine months, during which time he obtained a visa from the United States embassy using the same fake Indian passport and based on documents indicating that he was an Indian citizen. He then traveled to the United States, after which he claims that he returned the Indian passport to the broker in India as arranged. Thile moved to New York and then to Boston in 2013, where he continues to participate in activities with the Tibetan community.

Based on this testimony and Thile's evidence, including a photocopy of his Chinese household register, a photocopy of his marriage certificate, a photocopy of his children's birth certificates, a letter from the Office of Tibet in New York certifying Thile as a Tibetan refugee, and evidence of country conditions of Tibetans in China, on November 4, 2015, the IJ granted Thile a continuance to obtain the original household register or other original documents regarding his Chinese citizenship so that he could meet his burden of proving his Chinese citizenship. More than two years later, at his next hearing on March 29, 2018, Thile newly provided only a Tibetan Green Book, a

document issued in India indicating he was a Tibetan national, but no evidence that he was a Chinese citizen. The IJ explained that "the respondent [has not] produced any documentation to show that he made any efforts to get these documents . . . . He simply has not addressed this topic in terms of his submission to date."

Based upon the record and Thile's testimony, the IJ determined that Thile had not proven that he is a Chinese citizen without Indian citizenship, but rather that the record evidence "tends to show that the respondent is a citizen of India and the documents in the record do not support a finding that in India the respondent has suffered either past persecution or has a well-founded fear of future persecution." Further, the IJ determined that because he had not established past persecution or a well-founded fear of persecution in India, Thile did not meet the higher burdens for withholding of removal or protection under CAT.

Thile appealed the IJ's ruling to the BIA, which affirmed on all grounds. Specifically, the BIA concluded that the IJ "correctly found that the respondent submitted insufficient evidence to establish his Chinese citizenship in light of other record evidence showing that he is a citizen of India," and that the IJ did not err in determining that Thile did "not establish[] past persecution or a well-founded fear of persecution" in India, He now petitions for review of the BIA's decision.

## II.  JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 8 U.S.C. § 1252 over this timely appeal from a decision of the BIA following proceedings in Boston, Massachusetts.  "Judicial review of immigration cases normally focuses on the final order of the BIA.  But where, as here, the BIA accepts the IJ's findings and reasoning yet adds its own gloss, we review the two decisions as a unit."  Moreno v. Holder, 749 F.3d 40, 43 (1st Cir. 2014) (quoting Xian Tong Dong v. Holder, 696 F.3d 121, 123 (1st Cir. 2012)).  We consider questions of law de novo.  Ye v. Lynch, 845 F.3d 38, 42 (1st Cir. 2017).  We consider factual findings "under the deferential 'substantial evidence' standard, reversing only if a 'reasonable adjudicator would be compelled to conclude to the contrary.'"  Castillo-Diaz v. Holder, 562 F.3d 23, 26 (1st Cir. 2009) (quoting 8 U.S.C. § 1252(b)(4)(B)) (other citations omitted).

## III. DISCUSSION

Thile applied for asylum and withholding of removal under the INA and the CAT.  Each applicant bears the burden of proving that he or she meets the criteria for asylum and withholding of removal.  See 8 U.S.C. § 1158(b)(1)(B)(i)(stating that applicant bears burden of proving qualification for asylum); 8 U.S.C. § 1231(b)(3)(C) (stating that alien bears burden of proving withholding of removal); 8 C.F.R. § 1208.16(c)(2) (stating that applicant bears the burden of proving eligibility for

- 7 -

withholding of removal under the CAT). Our caselaw dictates that this burden can be met by specific, credible testimony or by "easily obtainable corroborating documentation" where "testimony is not itself compelling." Chhay v. Mukasey, 540 F.3d 1, 6 (1st Cir. 2008) (first citing Sela v. Mukasey, 520 F.3d 44, 46 (1st Cir. 2008); then citing Eke v. Mukasey, 512 F.3d 372, 381 (7th Cir. 2008); then citing Pan v. Gonzales, 489 F.3d 80, 83 (1st Cir. 2007); then citing Hayek v. Gonzales, 445 F.3d 501, 508 (1st Cir. 2006); and then citing REAL ID Act § 101(a)(3)). Even where the petitioner is otherwise credible, we will uphold a decision of the BIA where there are explicit findings that corroboration was reasonable and the failure to provide corroboration was not adequately explained. Id.; cf. Soeung v. Holder, 677 F.3d 484, 488-89 (1st Cir. 2012) (vacating dismissal of petition where BIA made "no finding at all on the adequacy of Soeung's explanation for failing to provide the required corroboration"). "Although the threshold of eligibility for withholding of removal is similar to the threshold for asylum, withholding requires a higher standard." Scatambuli v. Holder, 558 F.3d 53, 58 (1st Cir. 2009) (citation omitted).

Thile alleges various errors on the part of the BIA in affirming the IJ's decision. First, he contends that the BIA erred in affirming the IJ's determination that he did not meet his burden of proving himself a citizen of China and for not presuming

- 8 -

or addressing the credibility of his testimony.  Second, Thile argues that he is eligible for asylum based on a well-founded fear of persecution in both China and India.  We address each of these contentions in turn.

### A. CITIZENSHIP AND CREDIBILITY

Thile first contends that the BIA's affirmance of the IJ's finding that he failed to produce sufficient evidence to establish Chinese citizenship rather than Indian citizenship was flawed because Thile "should be found to have established his Chinese citizenship through his credible testimony and corroborating evidence."  Further, Thile claims that the BIA erred in not presuming him credible or further analyzing his credibility in light of the IJ's failure to state an explicit credibility finding.  Both of these arguments fail.

In order to be eligible for asylum, an applicant must demonstrate that he or she is a refugee, defined by statute as:

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . .

8 U.S.C. § 1101(a)(42).  Thus, a threshold determination to any decision on an asylum application is establishing the "country of such person's nationality" or, for those without nationality, the

"country in which such person last habitually resided."  Id.; see Wangchuck v. Dep't of Homeland Sec., 448 F.3d 524, 528 (2d Cir. 2006) ("[P]etitioner's nationality, or lack of nationality, is a threshold question in determining his eligibility for asylum" (quoting Dhuomo v. BIA, 416 F.3d 172, 174 (2d Cir. 2005)). Substantial evidence supports the determination that Thile did not meet his burden to establish that China was either his country of nationality or the country in which he last habitually resided.

Thile claimed in his asylum interview and testified before the IJ that he was a citizen of China.  He submitted what he claimed to be copies of his Chinese household register, his children's birth certificates, his marriage certificate, his Tibetan Green Book, and a letter from the Office of Tibet in New York in support of this claim.  However, the IJ also reviewed evidence on the record that Thile was a citizen of India.  For example, Thile was admitted to the United States with an Indian passport.  As the IJ noted, he traveled to Australia, obtained a United States visa, and was admitted into the United States with an Indian passport that was at each step accepted as genuine. Thile admitted that he resided in India for more than six years. Further, the IJ noted that record evidence indicated that Tibetans are able to obtain citizenship in India.

As has been noted, the IJ granted a continuance in Thile's case so that he could obtain additional evidence of his

Chinese citizenship. After more than two years, the only new evidence Thile produced was his Tibetan Green Book that was issued in India and did not indicate anything about the current status of Thile's citizenship in either China or India, but rather indicated that he was born in Tibet. He provided no additional evidence of attempts to obtain evidence of his Chinese citizenship nor any explanation for his continued lack of evidence other than that the documents were unavailable. Accordingly, the IJ made a determination based on photocopies of original documents, allegations of inconsistencies within those documents, original documents that were inconclusive as to his citizenship, Thile's admittance into the United States on an Indian passport, and Thile's own testimony. Taking this evidence into consideration, the IJ and BIA concluded based on substantial evidence that Thile had not carried his burden of proving his Chinese citizenship in the face of record evidence showing that he was an Indian citizen. He had ample opportunity to produce evidence or explain why he could not produce evidence of his Chinese citizenship, and yet did not do so. Thus, because Thile did not sufficiently corroborate his claims, we reject this aspect of Thile's appeal. Chhay, 540 F.3d at 6-7.

Thile further claims that the BIA should have presumed his testimony credible and that, had it done so, the BIA would have concluded that Thile was a citizen of China. The INA requires

- 11 -

that Petitioners provide corroborating evidence "unless the applicant does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1158(b)(1)(B)(ii). While credible testimony alone can satisfy a Petitioner's burden of proof, where

> [Petitioner's] testimony is not itself compelling[,] the absence of easily obtainable corroborating documentation can be the final straw. The substantial evidence test applies in these purlieus, and a reviewing court must accept the IJ's determinations with respect to the persuasiveness vel non of the alien's testimony, the availability of corroborating evidence, and the effect of non-production unless the record compels a contrary conclusion.

Chhay, 540 F.3d at 6 (first citing Sela, 520 F.3d at 46; then citing Eke, 512 F.3d at 381; then citing Pan, 489 F.3d at 83; then citing Hayek, 445 F.3d at 508; then citing REAL ID Act §101(a)(3), (e); and then citing Kho v. Keisler, 505 F.3d 50, 57 (1st Cir. 2007)). An IJ can require corroboration even without making an adverse credibility determination. See id.; Balachandran v. Holder, 566 F.3d 269, 273 (1st Cir. 2009); Diab v. Ashcroft, 397 F.3d 35, 40 (1st Cir. 2005). That was precisely the case here. The IJ found that, regardless of the credibility of Thile's testimony regarding his birth and original citizenship in China, other record evidence indicated that he became a citizen of India. Thus, the IJ concluded that "[Thile's] own testimony about being a citizen of China is not sufficient to convince this court that he did not later acquire Indian citizenship during the many years that he resided in India." The BIA's affirmance of the IJ's

- 12 -

finding that Thile did not prove his Chinese citizenship, on the basis of a lack of corroborating evidence, was not in error. Where, as here, the record contains conflicting evidence regarding petitioner's citizenship and Thile could not explain his lack of attempt to obtain further evidence to show his Chinese citizenship, there was no need for the BIA to address Thile's credibility. See Morgan v. Holder, 634 F.3d 53, 57 (1st Cir. 2011) ("The lack of a credibility determination is a cause for concern only when a claim turns on the veracity of the alien. . . . But a credibility determination is superfluous when the alien's testimony, even if taken at face value, is insufficient to compel an entitlement to relief." (citing Kho, 505 F.3d at 56; Makhoul v. Ashcroft, 387 F.3d 75, 81 (1st Cir. 2004))). Contrary to Thile's claim, the BIA did not "fully discount[] Petitioner's testimony without providing proper reasoning," but instead made a decision based on the record evidence and without needing to make an adverse credibility finding. Thus, we deny Thile's petition for review of the BIA's determination that Thile failed to prove his Chinese citizenship.[1]

---

[1] Thile further argues in regard to this issue that the BIA and IJ misstated and incorrectly characterized the record by observing that the DHS found Petitioner's Chinese identification card number to be fraudulent. We note that neither the BIA nor the IJ made findings on the legitimacy of the photocopied household register or of the Chinese identification card number, but rather relied on a lack of corroboration and original documents in the face of conflicting evidence in determining that Thile did not prove his Chinese citizenship. The BIA merely observed in a

## B. APPLICATION FOR ASYLUM, WITHHOLDING OF REMOVAL, AND CAT PROTECTION

As explained by the IJ, even if Thile retained his Chinese citizenship, he would not be able to base his application on a fear of returning to China because the firm resettlement principle bars such a claim. 8 C.F.R. § 208.15 (2017) ("An alien is considered to be firmly resettled if, prior to arrival in the United States, he or she entered into another country with, or while in that country received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement . . . .")[2]; see Bonilla v. Mukasey, 539 F.3d 72, 78 (1st Cir. 2008). By failing to corroborate his Chinese citizenship and failing to overcome substantial record evidence that he acquired

---

footnote, "[t]he Immigration Judge also noted that the DHS found the Chinese government identification card [number] submitted by the respondent to be fraudulent, which he does not challenge on appeal." In fact, the IJ stated that Thile "was asked if he knew that the asylum officer regarded [his Chinese identification card number] as fraudulent[,]" which he denied being told. Evident from a full reading of the IJ and BIA's opinions is that this reference is to information about Thile's Chinese identification card number within the photocopy of his household register. This is not a mischaracterization of the record constituting error, but rather a shorthand for the evidence on the record brought about by a lack of original documentation in the record as to Thile's Chinese identity card.

[2] The Department of Homeland Security issued a new definition of firm resettlement which superseded the definition cited here. Procedures for Asylum and Withholding of Removal; Credible Fear and Reasonable Fear Review, 85 Fed. Reg. 80,274 (Dec. 11, 2020) (codified at 8 C.F.R. § 208.15). This new regulation does not apply retroactively, and thus is inapplicable here.

Indian citizenship, Thile may not base his applications on a fear of returning to China. Thus, we examine his claim for asylum as a refugee from India, in that it was Thile's admitted last country of residence[3] and the country to which he indicated he was a citizen upon his entry to the United States. In so doing, we can easily decide Thile's remaining arguments regarding his eligibility for asylum.[4]

First, Thile is not entitled to asylum as a Tibetan facing removal to India. In order to be eligible for asylum, an applicant must prove his status as a refugee "who is unable or unwilling to return to . . . [the country of that person's nationality or last habitual residence] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(42). The IJ determined, and the BIA affirmed, that Thile did not meet either the past or well-founded fear of future persecution prongs of his asylum claim. We agree.

---

[3] Neither Thile nor the Government argues that Thile became a resident of Australia.

[4] The Government argues that Thile's contention regarding his eligibility for asylum on the basis of his treatment in China is not properly before us because the BIA did not issue a determination on that basis. We need not address this claim because we affirm the BIA's determination that Thile did not meet his burden of proving that he is a Chinese citizen. Therefore, he is not entitled to asylum or related relief on any claim that he may have faced or would face harm from the Chinese government.

- 15 -

The record does not indicate that Thile either faced or would face persecution in India on the basis of his Tibetan nationality, his religion, or his political beliefs in regard to Tibet.  As the IJ noted, the record does not support that he was seriously harmed during his two-day detention in India, and the record includes no evidence of what harm Thile suffered aside from Thile's own conclusory testimony that he "was mistreated physically, very badly."  Thile's description of a "single incident of physical harm [that] was an isolated event and [in which] the resulting injuries were not sufficiently severe to require medical attention" does not rise to the level of persecution.  Cabas v. Holder, 695 F.3d 169, 174 (1st Cir. 2012).  Nor does the record evidence regarding treatment of Tibetans in India support that there is a current pattern or practice of persecution of Tibetans in India.

Having not met the persecution prong for asylum, Thile is not able to meet the higher threshold for his counterpart claim of withholding of removal.  See Scatambuli, 558 F.3d at 58.  And since his CAT claim, as framed, depends on the same underlying claim of persecution, Thile is also unable to make out that claim.  Thus, we also deny his petition as to the BIA's affirmance of the denial of his applications for asylum and withholding of removal.

## IV. CONCLUSION

For the foregoing reasons, Thile's petition for review is **<u>DENIED</u>**.